## BARLOW *v.* DELANY *et al.*

*(Circuit Court, E. D. Missouri, E. D.  November 8, 1888.)*

1. **HUSBAND AND WIFE—WIFE'S SEPARATE ESTATE— PARTITION—COVENANTS—LIABILITY OF HEIRS.**
   B., a married woman, having a separate estate in certain lands, in which complainant by suit in ejectment had recovered an undivided interest, entered into a voluntary partition of the same with complainant. By her partition deed she agreed to warrant and defend the title to the lots set apart to complainant against her own acts and the acts of those under whom she claimed. Her husband did not join in said deed. The covenant having been broken after the death of B., *held*, on a bill filed by complainant against her heirs to recover damages, (*a*) that the covenant became a charge on the separate estate of B. owned at the time the covenant was made, which a court of equity will enforce against her heirs, to whom the estate has descended.[1]

2. **SAME—COVENANTS—EQUITY—JURISDICTION.**
   (*b*) That the remedy in such case against the heirs is in equity, and not at law, and that all the heirs may be proceeded against jointly, although the separate estate acquired of B. has been partitioned among them since her death.

3. **SAME—WIFE'S SEPARATE ESTATE—CONVEYANCE—SOLE DEED.**
   (*c*) That under the laws of Missouri, as construed by its highest court, a married woman holding a separate estate may convey the same by her sole deed, unless particularly restrained from so doing by the instrument creating the estate.[1]

4. **SAME—STATUTES—CONSTRUCTION.**
   (*d*) That section 669, Rev. St. Mo., is an enabling act passed to authorize husband and wife to convey by their joint deed the general estate of the wife, in which the husband has a marital interest, and that it does not operate as a limitation of the wife's power to dispose of her separate estate.

5. **SAME.**
   (*e*) That section 669 only limits the operation of such covenants of married women as are contained in deeds executed by them jointly with their husbands, and does not affect a covenant of a wife contained in a deed executed by herself and trustee conveying her separate estate.

6. **PARTITION—BY CONSENT OF PARTIES—IMPLIED COVENANTS.**
   (*f*) It seems that at common law no covenants were implied in case of a voluntary partition of lands among tenants in common or joint tenants, the rule being that each party must protect himself by express covenants.

7. **VENDOR AND VENDEE—VENDOR'S LIEN—COLLATERAL COVENANTS.**
   (*g*) In order to create a vendor's lien there must be a fixed amount of unpaid purchase money due to the vendor. A vendee's obligation to a vendor on a collateral covenant made at the time of a purchase will not give rise to a vendor's lien unless the vendor expressly reserves such lien in his deed.

8. **SAME—CHARACTER OF TRANSACTION—SALE OR EXCHANGE.**
   (*h*) The transaction between B. and complainant, as described in the bill, was not a sale of lands out of which a vendor's lien could arise, nor was it an exchange of lands such as would give rise to an implied warranty in behalf of either party.

*(Syllabus by the Court.)*

In Equity.  On demurrer to bill.

Bill against the heirs of Mrs. Octavia Boyce to establish a lien on certain lands held by her in her life-time as a separate estate.  The lands in

---

[1]As to the power of a married woman to contract so as to bind herself, and her separate estate, under the various statutes, see Jones v. Holt, (N. H.) 15 Atl. Rep. 214, and note; Greig v. Smith, (S. C.) 7 S. E. Rep. 610, and note.

question had been partitioned among the defendants (the heirs of Mrs. Boyce) subsequent to her death. Administration upon her estate had been closed before the covenant of warranty referred to in the opinion was broken, and before the bill was filed.

*W. H. Clopton*, for complainant.

*Thomas K. Skinker* and *George M. Stewart*, for defendants.

THAYER, J. Two general questions arise in this case, to which all others are subsidiary. The first is whether complainant has an equitable lien in the nature of a vendor's lien on the several parcels of real estate described in the bill, and now owned by defendants, because the deed of Mrs. Octavia Boyce, the mother of the defendants, made on April 15, 1867, failed to convey to complainant a fee-simple title to some of the lots described in that deed. The second is whether the defendants are bound by the express covenant of Mrs. Boyce contained in her deed of April 15, 1867, or by any covenant implied in the deed, or that is to be implied from the transaction out of which it arose.

In the case of *Barlow v. Delaney*, 86 Mo. 584, it was remarked at the close of the opinion that complainant "might have an equitable right to have the lots conveyed by him" to Mrs. Boyce on April 15, 1867, (contemporaneously with her deed to him,) "charged with a lien for the unpaid purchase price, which would be the value of the lots conveyed by Mrs. Boyce to the complainant at the time of that conveyance." What was thus said must be regarded merely as a suggestion that such equitable right might exist, rather than a decision that it did exist, inasmuch as the question as to the existence of such a right was not before the court for determination in that case. The learned judge who delivered the opinion evidently had in mind a vendor's lien, and in making the suggestion very likely acted on the assumption that the transaction between Mrs. Boyce and Mr. Barlow, as set forth in the record then under consideration, had some of the aspects of a sale of real estate. However that may be, the bill in the present case very clearly shows tha. it was not a sale, and that the doctrine of vendor's lien for that reason is not applicable to the case. The bill shows that in 1867 Mrs. Boyce was in possession of certain real property in the city of St. Louis, which she had derived title under John Mullanphy, Ann Biddle, and Bryan Mullanphy; and that the complainant, Barlow, had at that time obtained a judgment in ejectment against Mrs. Boyce for an undivided portion thereof. Thereupon, to avoid further litigation, Mrs. Boyce and Mr. Barlow agreed to an amicable partition of the property in the proportion of twelve-thirtieths to the complainant, and eighteen-thirtieths to Mrs. Boyce; the partition to be effected through the aid of commissioners by them chosen, and by an exchange of deeds, as soon as the commissioners had made the requisite allotment. It was agreed between them that each was legally and equitably entitled to an undivided interest in the property in the proportions above stated, and that after their respective shares had been ascertained and set apart by the commissioners, that deeds should be exchanged to effectuate the partition. Mrs. Boyce agreed to execute a deed containing

a "special warranty against any person or persons claiming or to claim the property embraced in her deed under her, or those under whom she had derived title," and Mr. Barlow was to execute a deed "with covenants of warranty against all persons lawfully claiming or to claim the property embraced in his deed, under him in any way, save on account of taxes." After the commissioners had made the allotment, deeds were duly executed on April 15, 1867. The deed from Mrs. Boyce, which was executed by herself and her trustee, (inasmuch as she held the property through trustees as her sole and separate estate,) contained a covenant to the effect that herself and heirs would "warrant and defend the title to the real estate to Barlow, and his heirs and assigns, against herself, and against all acts done or suffered by her, or John Mullanphy, or Bryan Mullanphy, or Ann Biddle, from whom she derived title." In point of fact Mrs. Boyce only had a life-estate in that part of the property derived from Ann Biddle; and it so happened that a portion of the property so derived was allotted to complainant in the partition, and after the death of Mrs. Boyce, the complainant's grantee was compelled to purchase the outstanding remainder then vested in the defendants by virtue of the will of Ann Biddle.

It is impossible to regard the transaction between Mrs. Boyce and Barlow as anything more than a voluntary partition of certain lands in which Mrs. Boyce and Barlow owned at the time undivided interests. The agreement recited that each was seized of an undivided interest in the lands, and the manifest purpose was to set apart to each their just proportion, so that they might thereafter hold their respective shares in severalty. It would clearly be a misnomer to call the transaction in question a sale. But even if it could be regarded as a sale, the bill shows that complainant received precisely what he agreed to accept as the consideration for his conveyance to Mrs. Boyce; that is to say, he received a deed conveying all of her interest in the twelve-thirtieths of the land allotted to him, together with such covenants as he had agreed to accept. Even upon the assumption, then, that the transaction in question was a sale, no portion of the purchase money agreed to be paid to the complainant remains unpaid, and there is no foundation for a vendor's lien upon the lots which he conveyed to Mrs. Boyce, unless it can be maintained that he is entitled to such lien to secure the faithful performance of the covenant made by Mrs. Boyce in the deed by her executed, which is said to have been broken. The question is to be hereafter considered, how far the covenants of that deed, either express or implied, are binding on Mrs. Boyce and her heirs, in view of her having been a married woman; but, waiving that question for the present, I remark that complainant cannot be allowed a vendor's lien on the lots by him conveyed, to secure the damages resulting from Mrs. Boyce's breach of covenant, even if the covenants expressed or implied in her deed are valid. The general rule is that, in order to create a vendor's lien, there must be a debt for unpaid purchase money to a fixed amount, due directly to the vendor. A vendee's obligation to the vendor on a collateral covenant will not give rise to a lien in favor of the vendor on lands by him con-

veyed, unless such a lien to secure the performance of the covenant is expressly reserved. *Patterson* v. *Edwards*, 29 Miss. 71; *Clarke* v. *Royle*, 3 Sim. 499; *Parrott* v. *Sweetland*, 3 Mylne & K. 655; *Buckland* v. *Pocknell*, 13 Sim. 406; *Brawley* v. *Catron*, 8 Leigh, 522; Herm. Mortg. §§ 176, 185. I have not overlooked the decisions in this state of *Pratt* v. *Clark*, 57 Mo. 189, 65 Mo. 157, and *Bennett* v. *Shipley*, 82 Mo. 448; but, as it appears to me, they can be reconciled with the rule last stated, which undoubtedly declares the true doctrine, and is best supported by reason and authority. In each of the cases last mentioned defendants had bought certain land of plaintiffs, agreeing to give therefor certain other land then incumbered with mortgages, and to pay off the mortgages. It was held that the plaintiffs had a lien on the property by them conveyed to the amount of the respective mortgages, which the defendant had agreed to discharge, but had failed to do. The amount of the mortgages in each case was treated as an unpaid portion of the purchase money which the vendors were to receive for their respective conveyances. In those cases, no doubt, the court allowed a vendor's lien under very exceptional circumstances; but the decisions therein fall very far short of establishing the proposition contended for in this case, that complainant has a lien on the lots which he conveyed to Mrs. Boyce, to make good the special covenant which she executed. I conclude, therefore, that the transaction between Mrs. Boyce and the complainant was not a sale of lands out of which a vendor's lien could arise, and that, even if it could be regarded as a sale, complainant received all of the consideration promised in the partition agreement, (that is to say, a deed with certain covenants;) and that, inasmuch as complainant did not in and by his conveyance to Mrs. Boyce expressly reserve a lien to secure the faithful performance of the covenants, no lien exists or can be implied for that purpose. The first general question above proposed is accordingly answered in the negative.

Passing to the second branch of the case, the most important question for consideration is whether the covenant of special warranty made by Mrs. Boyce in her deed of April 15, 1867, operated as a charge on the separate estate that she then owned? As she was a married woman at that time, she had no power to make a contract that could be enforced in a legal proceeding. The covenant that she made, therefore, if it is valid, can only be enforced in equity as a charge upon her separate estate. Rawle, Cov. (5th Ed.) §§ 305–307, and cases cited. From some allegations of the bill it would appear that the bill was framed partially upon the theory that the transaction between Mrs. Boyce and Mr. Barlow in 1867 was an exchange of property, and that Mrs. Boyce became bound by a covenant such as was once implied in case of an exchange of property. This theory of the case, however, is wholly untenable, as the transaction in question was not an "exchange of property," but a voluntary partition. Furthermore, Mrs. Boyce's deed did not contain the necessary words to create an implied covenant such as was formerly implied when an exchange of lands took place. Id. § 270; *Gamble* v. *McClure*, 69 Pa. St. 282; 3 Hil. Real Prop. (4th Ed.) 555.

I am also of the opinion that no implied covenant arose out of the transaction, treating it as a partition, for the reason that the partition was voluntary, and not enforced. In such cases the rule seems to be that the parties to a partition must protect themselves by express covenants, and that none will be implied. Rawle, Cov. (5th Ed.) §§ 277, 278, and cases cited. The fact that Mrs. Boyce was a married woman, and could not bind herself at law, is a further objection to all attempts to hold Mrs. Boyce liable at law upon any covenant that might possibly be implied as against a person not under disability. The only question to be considered, therefore, on this branch of the case, is whether the express covenant made by Mrs. Boyce ought to be enforced as a charge against her equitable estate in lands that have now descended to her heirs. It is claimed by counsel for the defendants that by virtue of section 669, Rev. St. Mo., which was in force on April 15, 1867, that her deed, notwithstanding the covenant of special warranty, only operated as a quitclaim, and that the damages resulting from a breach of that covenant are not chargeable upon the separate estate which she then owned. Section 669, last referred to, is as follows:

"A husband and wife may convey the real estate of the wife * * * by their joint deed, acknowledged and certified as herein provided; but no covenant expressed or implied in such deed shall bind the wife or the heirs, except so far as may be necessary, effectually to convey from her and her heirs, all her right, title, and interest expressed to be conveyed therein."

The case of *Bank* v. *Robidoux*, 57 Mo. 446, and the case of *Pratt* v. *Eaton*, 65 Mo. 165, unquestionably lend some aid to defendant's contention, as in each of those cases section 669 was held applicable to a married woman's covenant contained in a joint deed by husband and wife, conveying her separate estate. It is to be observed, however, that in the case under consideration Mr. Boyce did not join in the deed executed by his wife, and for that reason the covenant contained therein does not fall within the language of the statute. The first paragraph of section 669 refers exclusively to deeds executed jointly by husband and wife, and the last paragraph refers to covenants contained in such deeds as are mentioned in the first paragraph, and to no other covenants, unless it be by implication. It may be further remarked that the decisions in *Bank* v. *Robidoux* and *Pratt* v. *Eaton*, may have been influenced by an opinion which then prevailed to some extent in this state, that a married woman could not convey her separate estate by her sole deed, and that section 669 related to conveyances of a married woman's separate estate, as well as to conveyances of her general property, in which the husband had a marital interest. That view of the law has lately been expressly overruled in the very recent case of *Turner* v. *Shaw*, 96 Mo. ——, 8 S. W. Rep. 897, in which it is held that a married woman may convey her separate estate by deed, without joining her husband. It would in all probability now be held by the court of last resort (in conformity with the dissenting opinion in *Martin* v. *Colburn*, 88 Mo. 235) that section 669 is an enabling act passed to authorize a husband and wife to convey the wife's general property, and that it has no reference to conveyances of

her separate property, as to which she is to be regarded as a *feme sole*. The decision in *Turner* v. *Shaw*, leads logically to that conclusion. But whether it would or would not be so held, section 669 is not in terms applicable to this case, because the covenant under consideration was not contained in a joint deed executed by Mrs. Boyce and her husband. The result is that the effect of her covenant in the deed of April 15, 1867, (that deed having been valid,) must be determined by the same rules that determine when other contracts of a married woman become a charge on her separate estate; and, as it has long been the rule in this state that contracts of a married woman, whether oral or written, when made with reference to her separate estate or upon the credit thereof, become a charge against the same which a court of equity will enforce, no reason is perceived why the covenant made by Mrs. Boyce in the deed of 1867 may not be enforced against the separate estate which she owned at the date of the covenant, and eventually transmitted to her heirs. The covenant was contained in a deed conveying a part of her separate estate, and no reason can be assigned, consistent with the laws of this state, why it should not operate as a charge on the residue of her separate estate. *Whitesides* v. *Cannon*, 23 Mo. 457; *Kimm* v. *Weippert*, 46 Mo. 536; *King* v. *Mittalberger*, 50 Mo. 185; *Martin* v. *Colburn*, 88 Mo. 236, 237. The present bill, it is true, is not framed with a view of enforcing such a charge, and does not contain some of the allegations, at least, that are necessary to authorize such relief. For this reason the demurrers will be sustained, with leave to the complainant to amend if he so elects.

With reference to the contention that the defendants cannot be proceeded against jointly, and that the action is barred by limitation, and that the defendants, if liable, must be sued at law, rather than in equity, I will say that, after a careful consideration of all those points, my conclusion is that none of them are tenable. If complainant proceeds to charge the defendants with a liability which Mrs. Boyce imposed in equity upon her separate estate by executing the covenant of special warranty, which has been broken since her death, the proceeding is properly brought in equity, and against all of the heirs jointly, and the breach of the covenant occurred so recently that the proceeding is not barred. *Davis* v. *Smith*, 75 Mo. 219.